IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY and NEW HAMPSHIRE INSURANCE COMPANY,<br><br>Petitioners,<br><br>v.<br><br>CLEARWATER INSURANCE COMPANY,<br><br>Respondent. | No. C 13-2924 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION TO APPOINT AN UMPIRE; DENYING CROSS-PETITION** |

Granite State Insurance Company ("GSIC") and New Hampshire Insurance Company ("NHIC") (collectively "petitioners") have filed a petition pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 5, requesting that the Court appoint an umpire in the underlying arbitration proceedings. Respondent Clearwater Insurance Company has filed a cross-petition, to which petitioners have replied. Pursuant to Civil Local Rule 7-1(b), the Court finds that this matter is appropriate for resolution without additional argument and VACATES the hearing scheduled for August 30, 2013. Having reviewed the parties' papers and for good cause shown, the Court GRANTS IN PART and DENIES IN PART the petition and DENIES the cross-petition for the reasons set forth below.

**BACKGROUND**

Petitioners and respondent are parties to two reinsurance contracts entitled "Excess Third Party Liability First Excess of Loss Agreement" and "Excess Third Party Liability Second Excess of Loss Reinsurance Agreement." Pet. ¶ 10. NHIC and Clearwater are parties to a third reinsurance contract entitled "Contract of Reinsurance." *Id.* ¶ 11. Under all three contracts, Clearwater was the reinsurer and petitioners were the reassured. *Id.* ¶ 12. Petitioners GSIC and NHIC are part of the American

International Group, Inc., of insurance companies. *Id.* ¶ 5.

This case arises out of a dispute over Clearwater's adherence to its obligation to reimburse petitioners for their losses arising out of asbestos litigation. That litigation, in which Kaiser Aluminum Chemical Corporation sought insurance coverage from petitioners for thousands of asbestos bodily injury claims, concluded with a settlement in 2006, whereby petitioners agreed to cover some part of Kaiser's claims. *Id.* ¶ 14. Petitioners made payments to Kaiser consistent with the settlement agreement and in turn, billed Clearwater for its share of those payments pursuant to the three reinsurance contracts. *Id.* ¶ 15. After paying some of these bills, Clearwater ceased paying. *Id.* ¶ 16. Thereafter, on November 5, 2012, petitioners made a demand for arbitration under the reinsurance contracts.

Although they differ in other respects disputed by the parties, the parties agree that each of the three reinsurance contracts contain an identical arbitrator selection provision. They all provide for a panel of three arbitrators, with one chosen by the cedent (*i.e.*, petitioners), one chosen by the reinsurer (Clearwater), and the third (known as the umpire) chosen by the two arbitrators. Where the two arbitrators cannot agree on an umpire, the parties are to exchange names of two umpire candidates, decline one from the other party's list, and draw lots from the remaining two candidates.

Petitioners appointed their one arbitrator (Susan Claflin) on December 5, 2012. Clearwater, however, refused to appoint just one arbitrator, contending that the November 5, 2012, demand for a single arbitration was improper. Instead, Clearwater appointed one arbitrator to cover the first two reinsurance contracts at issue (James Sporleder), and a second one to cover the third contract (John Allare). Thereafter Ms. Claflin contacted Mr. Sporleder to select an umpire. Sneed Decl. ¶ 7. Mr. Sporleder replied that he was not in a position to do so, *id.*, and after a delay of several months, on March 11, 2013, the arbitrators exchanged the names of umpire candidates: petitioners' arbitrator nominated Clive Becker-Jones and Elizabeth Thompson; respondent's arbitrator nominated Dale Diamond and Jack Koepke. These nominations remain pending.

On March 21, 2013, petitioners' counsel sent counsel for Clearwater a proposed questionnaire to be sent to the four umpire candidates. *Id.* ¶ 9. On April 22, 2013, Clearwater's counsel raised the concern that the first and second reinsurance contracts between petitioners and Clearwater contained

a different "honorable engagement" clause than the third contract between only NHIC and Clearwater. *See* O'Sullivan Decl., Ex. H. Accordingly, Clearwater's counsel informed petitioners' counsel that it was willing to voluntarily proceed with one arbitration, rather than the three it had been demanding, if petitioners were willing to resolve the issue of which "honorable engagement" clause would govern that single arbitration. *Id*. The parties continued to dispute whether there was any material difference between the various "honorable engagement" clauses and whether the parties or an arbitration panel should decide which clause governed the proceeding.

On June 25, 2013, GSIC and NHIC filed this petition to appoint an umpire in a single arbitration proceeding from among the two candidates their arbitrator has nominated. Petitioners contend that they are at an impasse and that the Court should appoint an umpire so that a panel may be convened. On July 15, 2013, Clearwater filed a cross-petition to compel arbitration pursuant to 9 U.S.C. § 4, seeking a Court order requiring petitioners to participate in three separate arbitrations. Clearwater contends that three separate arbitrations are required because the individual contracts at issue contemplate the existence of separate arbitrations. Whether they may be consolidated into one arbitration, Clearwater insists, is a issue that can be addressed later, after three separate panels are convened.

**STANDARD OF REVIEW**

The Federal Arbitration Act creates a policy favoring enforcement of agreements to arbitrate. *See* 9 U.S.C. § 2. Section 4 of that Act permits the district court to order parties to an arbitration agreement to proceed in the manner provided for in that agreement, where one party has refused the other party's demand for arbitration. Where, however, the parties have agreed to arbitrate and there is "a lapse in the naming of an arbitrator or arbitrators or umpire," Section 5 provides that the district "shall designate and appoint an arbitrator or arbitrators or umpire." *See* 9 U.S.C. § 5; *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 814 F.2d 1324, 1329 (9th Cir. 1987). The district court may appoint an umpire in an underlying arbitration proceeding where "(1) there is a written arbitration agreement; (2) diversity provides an independent basis for federal jurisdiction; and (3) the underlying transaction involves interstate commerce." *Acequip Ltd. v. Am. Engineering Corp.*, 315 F.3d 151, 154

(2d Cir. 2003).

## DISCUSSION

Petitioners request that the Court appoint one arbitrator in one arbitration. Clearwater requests that the Court order the parties to select three different umpires in three separate arbitrations. The Court declines to do either. To do as either party requests, the Court would necessarily decide the parties' core dispute – whether petitioners' November 5, 2012, demand for a single arbitration was improper. Doing so would require this Court to overstep its authority to review arbitration agreements under the FAA.

Whereas the validity or enforceability of a contract containing an arbitration provision is an issue for a court to decide, it is settled law in this Circuit that disputes as to the scope of the parties' agreement to arbitrate is for the arbitrator, not the Court. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119-20 (9th Cir. 2008). The U.S. Supreme Court has made clear that procedural issues regarding an arbitration clause's scope are for the arbitrators to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Numerous courts since have held that the question of whether arbitration should proceed in one proceeding or multiple proceedings is an issue for the arbitrators to decide. *See, e.g.*, *Certain Underwriters at Lloyd's v. Westchester Fire Ins. Co.*, 489 F.3d 580, 587 (3d Cir. 2007); *Employers Ins. Co. v. Century Indem. Co.*, 443 F.3d 573, 581 (7th Cir. 2006) ("consolidation is a procedural issue" and "procedural issues are presumptively for the arbitrator to decide"); *Shaw's Supermarkets, Inc. v. United Food & Commercial Workers Union, Local 791*, 321 F.3d 251, 254 (1st Cir. 2003) (consolidation is "a procedural matter for the arbitrator"); *Clearwater Ins. Co. v. Granite State Ins. Co.*, 2006 WL 2827872, at *1 (N.D. Cal. Oct. 2, 2006) (Illston, J.) ("the issue of consolidation is one for arbitration panels, not the courts, to decide").

Clearwater's core concerns here are twofold – that (1) petitioners' initial demand for a single arbitration was invalid, and that (2) if a single arbitration does proceed, Clearwater's preferred "honorable engagement" clause should govern. Neither of these issues is appropriate for resolution by the district court. The two sections of the FAA urged by the parties, 9 U.S.C. §§ 4 and 5, limit the district court's authority to either require the parties to arbitrate as agreed, under Section 4; or to appoint

4

arbitrators under certain impasse conditions, under Section 5.  Neither of these provisions empowers the Court to decide the two scope-of-the-arbitration-agreement questions Clearwater poses.  To do as Clearwater requests, i.e., to require the parties to appointment three sets of arbitrators, the Court would necessarily have to find that petitioner's demand for a single arbitration was invalid.  In effect, Clearwater would require the Court to interpret the relevant contracts and decide whether they require one or more arbitrations – a consolidation issue decidedly outside the Court's purview.

Moreover, Clearwater's proposal would require the Court to order three separate arbitral panel appointments, under circumstances where three separate arbitration demands have not been issued.  As Clearwater concedes, petitioners have actually made only one demand for arbitration.  In responding to that single demand, Clearwater has repeatedly objected to its scope, but Clearwater has not made any separate demands for arbitration.  Thus, Section 4, which empowers the Court to enforce arbitration agreements *where there has been a proper demand*, cannot apply to the two additional arbitrations Clearwater seeks.  The Court simply cannot order the parties to proceed under Section 4 to arbitrate disputes about which no demand for arbitration has been made.

The Court is similarly constrained in granting the relief petitioners have requested.  Petitioners argue that the delay in the umpire appointment process is sufficient to warrant the Court's use of its Section 5 power to appoint an umpire.  The Ninth Circuit has cautioned, however, that district courts "respect" the umpire selection mechanism in the parties' arbitration clauses "by requiring compliance with those agreements *when possible*."  *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 814 F.2d 1324, 1328-29 (9th Cir. 1987).  There the Ninth Circuit affirmed the district court's appointment of an umpire in the underlying arbitration based on a finding that it was "impossible" for the court "to follow the agreement of the parties regarding the selection of the umpire." *Id.*

In the instant case, compliance with the parties' chosen mechanism for appointing an umpire is not impossible.  Instead, it is already underway in the single arbitration demanded.  While Clearwater disputes the scope of petitioners' initial demand, this is not a case where Clearwater has completely frustrated petitioners' efforts.  Rather, Clearwater has participated in the contractual appointment process.  Much of the delay has been to resolve the legal issues Clearwater has raised in its refusals to

5

proceed. Because the Court now effectively resolves those issues, by confirming that they must be resolved by the arbitration panel, there should be no need for further delay. As described above, the parties have each selected an arbitrator, and those arbitrators have each already submitted the names of their two umpire candidates.

Given the facts as they exist at this juncture, the Court is limited to its Section 4 authority – to require the parties to proceed with their contractually agreed upon appointment mechanism. The parties agree there is no substantive difference between the umpire selection procedures in each of the three agreements. Thus, pursuant to its Section 4 powers, the Court now requires the parties to arbitrate as agreed. Once selected, the *single* arbitration panel can resolve the issues of whether petitioners' demand for arbitration was an improper consolidation, which of the three "honorable engagement" provisions should govern, and any other similar issues the parties raise.

## CONCLUSION

For the reasons discussed above, respondent's cross-petition is DENIED. Petitioners' request is DENIED IN PART and GRANTED IN PART as follows:

Pursuant to 9 U.S.C. § 4, the Court hereby Orders the parties to arbitrate as agreed. Having nominated four umpire candidates in the single arbitration demanded, and being unable to decide among them, the parties shall each strike one candidate and draw lots from among the remaining two, as described in the underlying contracts. This process shall be completed **within seven (7) days of this Order**. Upon selection, the parties shall immediately notify the Court and this case will be dismissed. The denial in part of petitioners' request to appoint an umpire pursuant to 9 U.S.C. § 5 is without prejudice to re-filing should the parties reach an impasse in implementing this Order.

**IT IS SO ORDERED.**

Dated: August 19, 2013

SUSAN ILLSTON
United States District Judge

6